## TIMOTHY M. BRADLEY, for use, etc.

*v.*

## JOHN PARKS *et al.*

1. INSTRUCTION—*must be based on evidence.* An instruction on a state of facts of which there is no evidence tending to prove, is erroneous and calculated to mislead.

2. PLEDGE—*where title passes by sale by the pledgee.* A pledgee of a chattel may sell his interest in the same, and the owner can not recover the same of the purchaser without tendering him the sum due thereon, and if the pledgee is suffered to retain possession after tender of the sum due, and a sale is made to an innocent purchaser, who has no notice of the fact of its being only a pledge, the latter will acquire the title, even as against the real owner.

3. SAME—*tender and its abandonment.* Where the pledgor of a chattel, after tendering the sum due the pledgee, takes no steps to recover possession, he will authorize others to regard the pledge as still subsisting, and if purchased by another he can not recover the same in replevin, without tendering the sum due, to such purchaser.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. SHOREY & SHAFFNER, for the appellant.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The questions presented by this record are precisely the same as if they had arisen on the trial in the action of replevin instituted by Parks against Andrews & Kuhn, since the pleas set up that the replevin suit was not tried on its merits, and claim title and the right to the possession of the property in Parks.

The facts, in brief, are: In March, 1872, Parks pledged the property in controversy (a diamond pin) to one Lipman, to secure the payment of $100 and interest to accrue thereon. Afterwards Parks called on Lipman to redeem the pin. Lipman demanded $115, and Parks tendered him $110. Parks thereupon departed, leaving Lipman in possession of the pin.

170            BRADLEY *v.* PARKS *et al.*            [Sept. T.

Opinion of the Court.

In June, 1873, a Captain Blake pledged the same pin to Andrews & Kuhn, to secure the payment of $165, and some three months afterwards he sold them the pin for this sum and $10 in addition. There is no evidence, that we have been able to discover, even tending to show that Andrews & Kuhn had reason to suppose the pin did not belong to Captain Blake, or that they acted in bad faith in receiving it and advancing money upon it. On the 7th of January, 1874, Parks, without having made any previous demand for the pin, replevied it.

The court, at the request of appellees, gave this instruction to the jury:

"The court instructs the jury, that if they shall believe, from all the evidence before them, in this case, that the sale of said pin, by Lipman to Blake, was a sham and a fraud, and if they shall also believe, from all the facts proven in this case, that Kuhn, one of the parties for whose use the suit is brought, knew or had good reason to believe that Blake came by the pin in violation of the rights of the defendant Parks, through a fraudulent purchase thereof, and with such guilty knowledge purchased the pin from Blake, then they should find for the defendants."

This instruction was erroneous and calculated to mislead the jury, because there is no basis in the evidence preserved in the record on which to predicate it. It does not appear how Blake obtained the pin from Lipman; and there is no evidence of any circumstance from which Kuhn or any one else should have inferred that Blake obtained the pin in violation of the rights of Parks. It is simply proved that Blake was in the habit of pawning articles, as his necessities or caprices seemed to dictate; that he pawned this pin for $165, and subsequently sold it for $175, and that Andrews & Kuhn knew nothing of Parks' claim to it. If any circumstance was proved tending to bring notice to Kuhn of Parks' claim to the pin, or that Blake's possession was obtained in bad faith, it is unfortunate for appellees that it is entirely omitted from the bill of exceptions.

Lipman could, unquestionably, have sold his interest in the pin, and the vendee could have held the pin, as against Parks, until the amount he pledged it to secure was paid. *Belden* v. *Perkins*, 78 Ill. 449. In the absence of evidence showing how Blake obtained the pin from Lipman, the reasonable presumption is, that he obtained it as a purchaser of Lipman's interest only, and so held it as a pledgee in the place of Lipman; and this interest, at all events, he transferred to Andrews & Kuhn by his sale to them.

Parks, by leaving the pledge in Lipman's possession, after his tender, and taking no immediate steps to recover the possession of the pin, virtually abandoned any rights he might have had by reason of the tender, and authorized others to regard the pledge as still subsisting; and it was, therefore, incumbent on him to have tendered Andrews & Kuhn the amount for which the pledge was given, and demanded the return of the pin, before the commencement of the replevin suit.

The tender, on the trial, was too late.

The judgment is reversed and the cause remanded.

*Judgment reversed.*